*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-022

APRIL TERM, 2014

In re J.W., J.W. and G.W., Juveniles   }   APPEALED FROM:
                                        }
                                        }   Superior Court, Windham Unit,
                                        }   Family Division
                                        }
                                        }   DOCKET NO. 49/50/51-5-12 Wmjv

                                            Trial Judge: Katherine A. Hayes

In the above-entitled cause, the Clerk will enter:

Father appeals the termination of his parental rights with respect to his three daughters, G.W., J.W., and J.W. We affirm.

Father does not challenge any of the family court's findings, which reveal the following facts. G.W., J.W., and J.W. were born in October 2003, July 2005, and September 2006, respectively. The children were briefly placed in the custody of the Department for Families and Children (DCF) in 2011 during a period in which their mother was incarcerated and father allowed a registered sex offender to live in the family home. The children eventually were returned to the mother's custody under a conditional custody order, which was vacated upon dismissal of DCF's petition alleging that the children were in need of care or supervision (CHINS).

A second CHINS petition was filed in May 2012 based on allegations of neglect and abuse. At the time, the mother and father were heroin addicts who engaged in criminal activity to support their habit. The mother's younger sister, who was living with the family while she was finishing high school, reported that the parents left the children alone unsupervised and that father physically and verbally abused the children and the mother. In July 2012, the parents stipulated to the CHINS petition and the facts alleged in support of the petition, including specific incidents of child abuse by father. Father stipulated that he was an active heroin addict who had a significant history of criminal convictions and was subject to pending criminal charges.

The children were frightened and in poor physical condition when they were taken into state custody. The oldest child, who was nine at the time, had taken on a parental role. The children exhibited sexualized conduct and reported being forced to watch mother have sex with men. The children also reported witnessing and experiencing father's physical violence while they lived together as a family.

In August 2012, the family court issued a disposition order providing for continued DCF custody with concurrent goals of reunification and adoption. Among other things, the case plan required father to attend visits, participate in team meetings, actively engage in and benefit from

individual therapy, successfully complete intensive substance abuse treatment, not engage in criminal activity, demonstrate financial stability by maintaining employment for at least six months, and maintain safe and stable housing for at least six months. Later, DCF added a requirement that father complete and show benefit from a batterer's intervention program.

Meanwhile in June 2012, father pled guilty to retail theft charges stemming from incidents in February 2012. In December 2012, father pled guilty to additional charges of embezzlement and retail theft from earlier incidents. As a result of these convictions, father was incarcerated for a period during the summer of 2012 and from December 2012 through February 2013, when he was furloughed with a minimum release date of October 2, 2013 and a maximum release date of January 20, 2016.

In March 2013, DCF filed a petition to terminate the mother's and father's parental rights with respect to the three children. Mother voluntarily relinquished her parental rights on April 29, 2013, and an order to that effect was issued in May 2013. The termination hearing concerning father was held over two days in September and October, 2013. Following the hearing, in a December 16, 2013 decision, the family court terminated father's parental rights.

On appeal, father argues that the family court erred by determining whether he deserved a continuing relationship with the children rather than whether a continuing relationship between him and the children was in their best interests. According to father, in assessing two of the statutory best-interest factors concerning the children's relationships with other people in their lives, see 33 V.S.A. § 5114(a)(1), (4), the court mistakenly focused on father's actions rather than the children's best interests. We disagree.

Before terminating parental rights, the family court must find by clear and convincing evidence that termination is in the children's best interests based on the following statutory factors: (1) the children's relationship with their family members and any other person who may significantly affect their best interests; (2) the children's adjustments to their home, school, and community; (3) the likelihood that the parent will be able to resume parental duties within a reasonable period of time; and (4) whether the parent has played and continues to play a constructive role in the child's welfare. Id. § 5114. "The most important factor is whether the parent will be able to resume parenting duties within a reasonable period of time" as "measured from the perspective of the child's needs." In re C.P., 2012 VT 100, ¶ 30, 193 Vt. 29.

As the family court noted, all of the children had "recounted either witnessing or themselves experiencing physical violence by the father when they were living with the parents." Indeed, "[t]he children's continued expressions of fear and accounts of family violence made it clear that this was a key issue to be addressed in case planning." The court acknowledged the significant progress that father had made in the six months preceding the termination hearing, including becoming drug-free, following through with intensive outpatient treatment, obtaining work and housing, and starting individual therapy. Nonetheless, the court found that father had made no progress whatsoever toward reunification for the first ten months after the children were taken into state custody. Most troubling, for a lengthy period of time father refused to accept any responsibility for his having abused the children and the mother, and his recent acceptance of responsibility for his violence was "at best, grudging and limited." The court found that although father visited the girls regularly for one hour a week when he was not incarcerated, his failure to address his own anger issues prevented him from increasing the frequency or length of those visits. The court also recognized the progress that father had made in therapy during the

2

previous two months in dealing with his anger issues, but noted that he had not enrolled in an anger management or batterer's intervention program, as required by DCF. The court concluded that, given the "chaotic, dangerous, and unhealthy conditions" that the children endured under their parents' care for years before they were taken into state custody, which resulted in "significant and pervasive problems" for the children, it was critical for father to promptly address the issues that caused the children to be removed from his custody, most particularly his drug use and violent conduct. Although father had been drug free for some time, he had not yet fully addressed his anger issues or taken full responsibility for his violent conduct and the effect that it had had on the children.

In the court's view, because father had still not fully satisfied "some of the most important goals of the case plan," he would be unable to resume parental duties "for at least several more months," even without taking into account that he had no significant experience as a single parent and that he was under the continuing supervision of the Department of Corrections. Meanwhile, the children had been making progress in "safe, healthy, and supportive homes" for some time and needed permanence to continue to do so. In short, the family court did not terminate father's parental rights because he did not "deserve" a continuing relationship with his daughters; rather, the court based its termination order on the fact that father had failed to take, in a timely manner, the steps necessary for him to be able to parent the children within a reasonable period of time from their perspective.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

3